IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 22-CR-615 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| LAWRENCE STURDIVANT, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, David M. Toepfer, United States Attorney, and Adam J. Joines and Margaret Kane, Assistant United States Attorneys, and hereby files this Sentencing Memorandum.  Lawrence Sturdivant should be sentenced to total imprisonment of between 352 and 360 months, which is within the range offered to the Court in the Plea Agreement, at the low end of the Guideline range contemplated by the parties in the Plea Agreement, and far below the Guideline range calculated in the Presentence Investigation Report ("PSR").  Such a sentence would be sufficient, but not greater than necessary, to provide just punishment for Sturdivant's streak of ten store robberies where he directed his gun at over a dozen different victims.  His reckless disregard for the value of life, just to gain a few hundred dollars, shows his callous indifference to the rules of society and the law.  The only way to deter future criminal conduct and protect the public from Sturdivant's future crimes is a sentence at the high end of the Plea Agreement's contemplated (c)(1)(C) range. *See* 18 U.S.C.§ 3553(a)(2).

## I.      Factual and Procedural Background

The United States agrees with the facts presented in the PSR, and incorporates them herein.  (R. 132: PSR, ¶¶ 5–17).[1]  In summary, from December 5 to December 26, 2021, Lawrence Sturdivant robbed ten stores around Cleveland by using a gun to threaten, intimidate, and coerce victims into giving him money from cashier drawers.  Sturdivant's method during each robbery remained largely the same.  He would enter the store and wander among the aisles before picking up a small item, such as a candy bar or bag of chips.  He would bring the item to the cashier, place it and some money on the counter, and wait for the victim to open the drawer.  Sturdivant would then draw a gun, point it at or hold it close to the victim, and order them to give him cash.  Sturdivant would then flee in his black Chevrolet Camaro.  Sturdivant robbed:

| NO. | COUNT | DATE | TIME | STORE | ADDRESS |
| --- | --- | --- | --- | --- | --- |
| 1 | 1 | Dec. 5, 2021 | 4:03 P.M. | Walgreens | 16400 Chagrin Boulevard, Shaker Heights, Ohio 44120 |
| 2 | 2 | Dec. 5, 2021 | 4:29 P.M. | Walgreens | 11401 Union Avenue, Cleveland, Ohio 44105 |
| 3 | 4 | Dec. 11, 2021 | 12:56 P.M. | Family Dollar | 8404 Madison Avenue, Cleveland, Ohio 44102 |
| 4 | 5 | Dec. 11, 2021 | 1:30 P.M. | Family Dollar | 16605 South Miles Road, Cleveland, Ohio 44128 |
| 5 | 7 | Dec. 16, 2021 | 7:23 A.M. | Walgreens | 3415 Clark Avenue, Cleveland, Ohio 44109 |
| 6 | 8 | Dec. 16, 2021 | 8:14 A.M. | CVS | 8000 Euclid Avenue, Cleveland, Ohio 44103 |
| 7 | 10 | Dec. 17, 2021 | 8:58 A.M. | Family Dollar | 3470 East 93rd Street, Cleveland, Ohio 44104 |
| 8 | 11 | Dec. 26, 2021 | 10:10 A.M. | Family Dollar | 11511 Kinsman Avenue, Cleveland, Ohio 44104 |
| 9 | 12 | Dec. 26, 2021 | 11:00 A.M. | Family Dollar | 4172 Pearl Road, Cleveland, Ohio 44109 |
| 10 | 13 | Dec. 26, 2021 | 11:45 A.M. | Family Dollar | 7301 Detroit Avenue, Cleveland, Ohio 44102 |

---

[1] Because the PSR remains sealed and not on the Court's Electronic Filing System, it does not have PageID numbers.  References will therefore be made to the document's internal page or paragraph number, as appropriate.

Victims experienced Sturdivant using his gun during each robbery.  For example, during the first robbery on December 5, 2021 at Walgreens on Chagrin Boulevard, Sturdivant held the gun over the counter while demanding the victim give him money:



The same day less than half an hour later, Sturdivant did the same thing at Walgreens on Union Avenue, this time pointing the gun directly at the cashier:



A few days later on December 11, 2021, Sturdivant continued his spree at Family Dollar on South Miles Road by pointing his gun at the cashier while he demanded money from the register:



On December 16, 2021, Sturdivant did the same thing at CVS on Euclid Ave. to another cashier:



Sturdivant robbed nine stores successfully,[2] including three the morning after Christmas.

---

[2] One robbery was not successful despite Sturdivant demanding the cash because the victim was unable to open the drawer before he fled the scene.

Sturdivant's robbery spree stopped the night of December 26, 2021, when he cleaned his black Camaro near his girlfriend's house, drove it to another street, abandoned it, and called the Cleveland police to report it stolen.  Sturdivant did so to cover up his involvement in the robberies.  But law enforcement identified him, and on December 27, 2021, they executed a search warrant on his home.  Although they did not find the gun, officers found ammunition that Sturdivant cannot possess given his prior violent felony convictions.

A grand jury indicted Sturdivant with fourteen felonies:

- Counts 1, 2, 4, 5, 7, 8, 10, 11, 12, and 13 for violations of 18 U.S.C. § 1951(a): Interference with Commerce by Robbery;

- Counts 3, 6, and 9 for violations of 18 U.S.C. § 924(c)(1)(A)(ii):  Use, Carry, and Brandish a Firearm During and in Relation to a Crime of Violence; and

- Count 14 for a violation of 18 U.S.C. 922(g)(1):  Possession of Ammunition by a Convicted Felon.

After obtaining and reviewing discovery, obtaining new counsel, and filing a pretrial motion, Sturdivant pleaded guilty via written plea agreement.  (R. 116: Notice of Intent to Plea and Plea Agreement (sealed)).[3]

## II.    Law and Argument

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Appellate courts must review a district court's sentence for procedural and substantive reasonableness.  *Id.* at 51.

---

[3] The Plea Agreement is not on ECF, it does not have PageID numbers, so references herein will be to paragraph numbers or pages, as appropriate.

Although the Guidelines are advisory, appellate courts may apply a presumption of reasonableness to a sentence that falls within the Guideline range.  *Id.*

A.      Advisory Guidelines Calculation

The United States does not object to the final presentence report.  (R. 132: PSR (sealed)). The Plea Agreement, however, contemplates a different Guideline calculation than the PSR.  The Plea Agreement provides the following Guideline stipulation:

**COUNTS 2, 5, and 8**

| U.S.S.G. §2B3.1:  Robbery | | |
|---|---|---|
| Base offense level | 20 | §2B3.1(a) |
| Special Offense Characteristic – None | 0 | |
| **Subtotal (per Count)** | **20** | |

**COUNTS 1, 4, 7, 10, 11, 12, and 13**

| U.S.S.G. §2B3.1:  Robbery | | |
|---|---|---|
| Base offense level | 20 | §2B3.1(a) |
| Special Offense Characteristic – Brandish/possess firearm | 5 | §2B3.1(b)(2)(C) |
| **Subtotal (per Count)** | **25** | |

**COUNT 14**

| U.S.S.G. § 2K2.1:  Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition | | |
|---|---|---|
| Base offense level | 20 | §2K2.1(a)(4)(A) |
| Special Offense Characteristic – None | 0 | |
| **Subtotal** | **20** | |

| U.S.S.G. § 3D1.4:  Multiple Count Adjustment | | |
|---|---|---|
| **Count to be Adjusted** | **Adjusted Offense Level** | **Units** |
| Count 1 | 25 | 1 |
| Count 2 | 20 | 0.5 |
| Count 4 | 25 | 1 |
| Count 5 | 20 | 0.5 |
| Count 7 | 25 | 1 |
| Count 8 | 20 | 0.5 |
| Count 10 | 25 | 1 |
| Count 11 | 25 | 1 |
| Count 12 | 25 | 1 |

| Count 13 | 25 | 1 |
|---|---|---|
| Count 14 | 20 | 0.5 |
| **Total** | | **9 Units** |
| Increase in Offense Level | | +5 |
| **Combined Adjusted Offense Level Before Acceptance of Responsibility (Highest Level + Increase)** | | **30** |

### COUNTS 3, 6, and 9

| **U.S.S.G. § 2K2.4:  Brandishing a Firearm During and in Relation to a Crime of Violence** | | |
|---|---|---|
| Base offense level | Statutory minimum under §924(c) | §2K2.4(b) |
| **Sentencing Range** | **7 years consecutive to any other sentence** | |

*See* (R. 116: Plea Agreement, ⁋ 16); (R. 132: PSR, ⁋ 2).  The PSR aligns with this calculation except on Counts 4, 7, 10, 11, 12, and 13, where the PSR includes a +6 enhancement for a firearm that was "otherwise used," pursuant to U.S.S.G. §2B3.1(b)(2)(B).  (R. 132: PSR, ⁋⁋ 35, 47, 59, 65, 71, and 77).  The Plea Agreement contemplates a +5 specific offense characteristic for brandishing the firearm on each of these counts.  (R. 116: Plea Agreement, ⁋ 16).  This results in a different offense level, before acceptance, of 31, compared to 30 in the Plea Agreement.  (R. 132: PSR, ⁋ 142).[4]  Although the United States understands the reasoning of the PSR in applying this enhancement (*see* (*id.* at 34–35 (response by U.S. Probation Officer to Sturdivant's objection to the +6 enhancement), based on the facts in the Plea Agreement and the stipulations of the parties, it asks that the Court apply the Guideline calculation in the Plea Agreement.

---

[4] The PSR also notes that there is no acceptance of responsibility reduction.  The United States understands that Sturdivant accepted responsibility in signing the Plea Agreement, and further expects that he will offer additional statements consistent with that position at the sentencing hearing.  It therefore intends, absent information to the contrary that he no longer accepts responsibility, to move and request the Court grant the 3-point reduction under §3E1.1(a) and (b).  (R. 116: Plea Agreement, ⁋ 17).  The United States does not oppose, if needed, the Court's inquiry of Sturdivant during the sentencing hearing to determine whether he accepts responsibility such that he should be granted the reduction.

The Plea Agreement and PSR are consistent in finding that the Guidelines advise, consistent with the mandate in 18 U.S.C. § 924(c)(1)(A)(ii), that each of Counts 3, 6, and 9 carry an 84-month  (7 year) minimum sentence that must be served consecutive to any other sentence, for a total of 252 months' imprisonment (21 years).  (*Id.*, ⁋ 95); (R. 116: Plea Agreement ⁋ 16).

B.       Criminal History Category

The PSR finds that Sturdivant is a criminal history category IV.  (R. 132: PSR, ⁋ 110). The United States agrees with its calculation of his criminal history.

C.       Sentencing Guideline Calculation

Should the Court agree with the parties, find that Sturdivant accepts responsibility, and find he is a criminal history category IV, the anticipated Guideline range for all counts except Counts 3, 6, and 9 will be 100–125 months.  If added to the mandatory 252 months in Counts 3, 6, and 9, this yields a combined Guideline range for total incarceration period of 352–377 months (approximately 29.3 to 31.4 years).  This differs from the combined Guideline calculation in the PSR (which adds 1 point to the total offense level and does not provide for acceptance of responsibility) of 403–440 months.  (R. 132: PSR, ⁋⁋ 140–141).

The Plea Agreement further requests, pursuant to Federal Rule of Criminal Procedure (c)(1)(C), that the Court impose a sentence between 252 and 360 months (21 to 30 years).  (R. 116: Plea Agreement, ⁋ 14).  This range includes the parties' stipulated Guideline range, but falls below the PSR's advised total range.  For the reasons articulated below and additional grounds it expects to expand upon further at sentencing, the United States requests that the Court accept the Plea Agreement and impose a sentence within the range of 352–360 months.

D.       Title 18, United States Code, Section 3553(a) Factors

A sentence between 352 and 360 months, which is at the low end of the Plea Agreement's anticipated Guideline range, is appropriate and sufficient, but not greater than necessary, to comply with the § 3553(a) factors.  Pursuant to 18 U.S.C. § 3553(a):

The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence, and the sentencing range . . . ;
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . .

18 U.S.C. § 3553(a).

1.       Nature and Circumstances

The nature and circumstances of the offense support a sentence at the high end of the (C) range.  Over twenty-one days in December 2021, Sturdivant terrorized employees and patrons of Cleveland stores by robbing innocent people at gunpoint.  Ten times he entered a store, pretended to buy something, and brandished a gun when the cashier tried to process his purchase. He used his gun to threaten, intimidate, and coerce his victims into giving him money. Sturdivant then stole money from the till before driving away.  Some days he finished one robbery only to drive to another store and do it again.  Sturdivant pointed his gun at his victims, saying things like "I don't want to shoot you" (R. 116: Plea Agreement, ¶ 21.j) and "I don't want to hurt nobody, but I will" (R. 132: PSR, ¶ 12).

Each time Sturdivant chose to rob another store, he added to a growing list of victims. Rather than quit his crime spree after his first successes, Sturdivant entered more stores for more money.  He felt the several hundred dollars he took each time warranted aiming a deadly weapon at innocent employees who were trying to earn an honest living.  By putting victims directly in the line of fire, Sturdivant created an unnecessary and unreasonable risk of serious bodily injury or death.  Sometimes others in the store watched Sturdivant, hoping the situation would resolve peacefully.  Fortunately, no one was hurt, but each robbery Sturdivant committed with his gun was a finger twitch away from becoming a felonious assault or homicide.  Each of Sturdivant's offenses was violent, and the victims suffered emotional and mental trauma because of it.  The victims will continue to suffer the horrible effects from this traumatic event caused by Sturdivant's actions, which he chose to repeat at different locations for three weeks.  Each victim is a separate individual with his or her own reactions, traumas, and burdens from these events. His sentence must account for his violent assaults on each and every person's well-being and sense of security.

Sturdivant's actions following the robberies also aggravate the severity of his offenses because he tried to hide evidence and obstruct law enforcement's efforts to find him.  The night after his tenth robbery, Sturdivant drove his black Camaro to a vacant lot near his girlfriend's house.  He cleaned the car, drove it around the block, parked it, walked back to his girlfriend's house, and reported it to Cleveland police as stolen.  (R. 116: Plea Agreement, ¶ 21.o).  It was not stolen; Sturdivant parked the car and made the false report to distance himself from the car he used to flee his robbery scenes.  Law enforcement further did not find the firearm Sturdivant used, possibly because, as Sturdivant stated during his arrest, he threw it in Lake Erie. Regardless of whether he actually did, Sturdivant was not forthcoming about his robberies when

confronted with evidence of his crimes.  Although he later pleaded guilty in this case, he did not take any responsibility at the start, and even found ways to obfuscate his involvement.

>    2.    History and Characteristics

Sturdivant's lengthy and violent criminal history further supports a high-end sentence between 352 and 360 months.  Many of his recent convictions are more serious and scored criminal history points.  At age 19, Sturdivant committed multiple burglaries by attempting to kick doors in to steal items from victims' homes.  (R. 132: PSR, ₽ 104).  He was convicted of burglary and attempted burglary after he took multiple televisions and caused damage while doing it.  (*Id.*).  At age 23, Sturdivant possessed cocaine, a stolen credit card, and a stolen firearm.  (*Id.*, ₽ 105).  He was convicted of drug possession.  (*Id.*).  At age 24, he both operated a vehicle under the influence (*id.*, ₽ 106) and pointed a gun at a Subway employee during an armed robbery (*id.*, ₽ 107).  Like the instant offenses, Sturdivant used his gun to coerce and threaten his victim to give him money.  (*Id.*).

Sturdivant also has many convictions that scored for no criminal history points.  (*Id.*, ₽₽ 97–103).  Some, like his assault conviction at age 13, involved violence.  (*Id.*, ₽ 97).  Others, like receiving stolen property at age 19, involved stealing items via burglary.  (*Id.*, ₽103).  All these offenses show that Sturdivant both started criminal activity early and continued breaking laws throughout his entire life.  Despite several prison sentences, he has not yet been deterred from his life of crime.

When imprisoned, Sturdivant has a long history of violating rules and committing additional offenses.  While serving a sentence in 2010 and 2011, he had multiple infractions for fighting, being out of place, refusal to carry out work and assignments, disrespect to authority figures, disobedience of a direct order, possession of contraband, physical resistance to a direct order, engaging in unauthorized group activities, causing or attempting to cause harm to another,

11

and gambling.  (*Id.*, ¶ 103).  During another prison stay, he continued violating rules by possessing property of another, being out of place, disobeying direct orders, fighting, destruction of property, seductive or obscene acts, encouraging or creating a disturbance, disrespect to an officer, giving false information or lying to employees, attempting to establish a personal relationship with an employee (including giving or receiving money by attempting to sell Suboxone strips, a cell phone, and methamphetamine), threatening bodily harm to another, unauthorized possession of drugs (marijuana and Suboxone), physical resistance to a direct order, self-mutilation, engaging in unauthorized group activities, causing or attempting to cause physical harm to another, refusal to accept an assignment, refusal to carry out work, intentionally grabbing or touching staff without consent in a way likely to harass, and possession or manufacture of a weapon (homemade shank).  (*Id.*, ¶ 107).

Even the threat of a sentence in this case could not deter Sturdivant from violating rules while in pretrial detention.  In March and April 2023, Sturdivant exposed his genitalia to female staff members and masturbated while smiling at them.  (*Id.* ¶ 3).  He continued this behavior as recently as April 2025.  (*Id.*).  In August 2023, Sturdivant punched another inmate twice in the face.  (*Id.*).  In May 2024, Sturdivant kept an unauthorized cell phone and, when asked to give it to staff, refused by threatening to fight that staff member.  (*Id.*).  Sturdivant then tried to flee out of the sally port, which required the staff member to deploy spray to stop him.  (*Id.*).

Sturdivant is a member of the Heartless Felons, a violent gang.  In 2011, Sturdivant participated in a gang-related attack on another inmate.  (*Id.*, ¶ 103).  He did so because he claimed to be the "God Father" of the Heartless Felons at the institution such that he could give orders about expelling members forcefully if needed.  (*Id.*).  His participation in this gang

12

continued in 2019 when he was involved in an STG[5] event that disrupted institution operations. (*Id.*, ¶ 107).  In January 2022 (shortly after his robberies and arrest), Sturdivant was still profiled as a Heartless Felons member.  (*Id.*).  During the interview for the PSR, Sturdivant claimed to still be a member.  (*Id.*, ¶ 116).[6]  Regardless of whether he is active today, his history with this gang supports a higher sentence because it shows his actions were connected, at least in part, to a willful choice to further organizational crime.

Sturdivant's lengthy criminal history also aggravates his current crimes because they show that his robbery firearm (and ammunition found in his house) were possessed illegally. Violent criminals cannot possess guns because they are more likely to use them.  It follows that they cannot buy guns legally and must do so on the street.  Sturdivant chose to be one such person by using his gun, repeatedly, to take from others through the threat of violence.  His choice to use a weapon this way, despite being told several times by prior courts that he could not legally possess firearms or ammunition, shows his callous disregard for legal standards and common norms that allow society to function without fear of bodily harm.  It further supports a longer prison sentence.

### 3. Need for the Sentence to Be Imposed

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[5] STG stands for "security threat group," which is otherwise known as a prison gang.  *See* https://en.wikipedia.org/wiki/Prison_gang (last accessed April 21, 2026).

[6] Sturdivant may dispute this status now, given his first objection to the PSR.  (R. 132: PSR at 34).

18 U.S.C. § 3553(a).  There is a need for significant sentence to be imposed.  Despite multiple prison sentences, including one for 7 years after he committed armed robbery (R. 132: PSR, ⁋ 107), Sturdivant never stopped committing violent felonies.  In fact, the instant string of robberies started less than 7 months after his release from prison.  (*Id.*).  The seriousness of Sturdivant's offenses is enhanced given this is not the first time he robbed someone at gunpoint. It also shows that 7 years imprisonment is far from adequate to deter Sturdivant's criminal activity, and that a more severe sentence is necessary.

The number of robberies Sturdivant committed further increases the seriousness of his offenses and demands just punishment.  Each time Sturdivant entered a store to rob it, he increased the risk of violence and harm to everyone present.  Each dollar he took, he disrupted the peaceful exchange of goods and services on which store patrons relied.  Each person he pointed or brandished his gun toward, he created a new victim.  Sturdivant's choice to continue the robberies, even after he had time to think about his decisions, shows he was motivated by more than just the money he took.  He continued his streak of crime until law enforcement intervened.  It is unclear how many stores he might have robbed if left to his own devices.

The Court should also weigh his specific conduct when deciding a just punishment for the charges in the indictment.  Although he was only charged and convicted of three § 924(c) offenses for brandishing a firearm during a violent crime, evidence and Sturdivant's admissions show he used a firearm in every robbery attempt.  If he were charged with more § 924(c) offenses, he might have faced multiple additional 7-year mandatory and consecutive prison sentences.  In that sense, a sentence of 252 months would in a sense only address the conduct of those three robberies attached to § 924(c) charges.  When evaluating the § 3553(a) factors and weighing the total sentence Sturdivant should serve as contemplated by statute and the

14

Guidelines in this case, the Court should account for his repeated brandishing of a firearm in every robbery against each individual victim.  A sentence between 352 and 360 months, although significant and lengthy, is far less than the potential sentence for nine or ten firearms offenses that might have been stacked on top of the robberies.[7]

Sturdivant has little, if any, respect for the law.  In addition to his attempts to avoid law enforcement detection after the robberies, his lack of respect for the law comes into focus when addressing his violations while in prison.  His multiple violations for having drugs, refusing to comply with orders, fighting, and possessing weapons show his refusal to comply with rules and laws.  (*Id.* ¶¶ 103, 107).  Sturdivant also committed the instant offenses while on post-release control from his prior armed robbery conviction.  (*Id.* ¶ 109).  These violations show that Sturdivant has no interest in reforming himself or following the same laws and rules governing our society.  A high-end sentence would be a just punishment for Sturdivant's offenses, given the surrounding circumstances.

There is also a need to afford adequate deterrence and protect the public from Sturdivant's future offenses.  To date, there is no evidence that Sturdivant has interest in being a lawful member of society.  His prior prison sentences have not deterred his criminal behavior.  When unchecked, less than seven months passed from his seven-year prison sentence before

---

[7] Similarly, comparisons to other defendants with the same Guideline and "at least one count of 18 U.S.C. § 924(c)" do not provide sufficient guidance toward "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see also* (R. 132: PSR, ¶¶ 173, 174 (describing small pool of other defendants with a similar offense level and criminal history category).  The higher number of firearm brandishings in this case make it different.  The total sentence should reflect Sturdivant's actual conduct, including how he used his gun to further each robbery in some way.  Other cases with lower sentences and involving only one use of a gun are not so similarly situated that they should override the actual facts of the case.

Sturdivant committed these offenses.  It is fortunate, indeed lucky, that Sturdivant did not hurt anyone physically.  But he created many situations where someone, with a slight change in conditions or circumstances, could have been hurt or killed.  He committed each robbery while still under a sentence for another robbery that landed him in prison.  Sturdivant has shown the only way to stop him from being a violent criminal is to remove him from the public.  The Court can do that here, by sentencing at the highest end of the (c)(1)(C) range.

A sentence between 352 and 360 months would accomplish the goals of § 3553(a).  It is sufficient to meet the objectives above as they apply to Sturdivant's case while not being greater than necessary.  In fact, anything less would not sufficiently reflect the seriousness of Sturdivant's offenses, promote respect for the law, deter Sturdivant from future crimes, and, perhaps most importantly, protect the public from Sturdivant's future robberies.

**III.     CONCLUSION**

For the foregoing reasons, the United States requests that this Court impose a total imprisonment sentence within 352–360 months.  The United States is prepared to expand on these issues and recommendations, and to address additional information not included in this memorandum related to restitution, fines, victim statements, and supervised release conditions, at the sentencing hearing.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Adam J. Joines
     Adam J. Joines (OH: 0094021)
     Margaret Kane (OH:  008284)
     Assistant United States Attorneys
     801 W. Superior Ave., Suite 400
     Cleveland, Ohio 44113
     (216) 622-3929/3624
     (216) 522-7358(facsimile)
     adam.joines@usdoj.gov
     margaret.kane@usdoj.gov